**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENWOOD McQUEEN,            | 1:10-cv-00602 AWI GSA HC |
|         Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
|    v. | |
| J. D. HARTLEY, Warden, | |
|         Respondent. / | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his convictions in Los Angeles County Superior Court in 1998 of attempted murder with an enhancement for being armed with a weapon, and assault with a deadly weapon resulting in great bodily injury. Petitioner is serving an indeterminate sentence of life plus four years with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he challenges a May 28, 2009, decision of the Board of Parole Hearings (Board) denying parole. Petitioner's minimum

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

parole eligibility date was May 29, 2008, and this was Petitioner's second parole suitability hearing. He claims the Board violated his due process rights in its 2009 decision finding him unsuitable for parole. He claims the Board's decision was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the United States Supreme Court. He further alleges the Board's decision was an unreasonable determination of the facts in light of the evidence. He contends the superior court erred when it intimated a nexus finding that was not made or articulated by the Board. He alleges the superior court's decision is not supported by the record or some evidence. He claims the factors relied upon were not probative of current dangerousness. He claims the underlying conviction is no longer a predictor of current dangerousness. He contends the Board's reliance on a "lack of insight" was not supported by the record or some evidence. Finally, he asserts the Board violated the Ex Post Facto clause by applying Proposition 9 ("Marsy's Law) to his case.

Petitioner filed a habeas court petition challenging the Board's 2009 decision in the Los Angeles County Superior Court on September 17, 2009. The petition was denied in a reasoned decision on December 1, 2009. Petitioner then filed a state habeas petition in the California Court of Appeal, Second Appellate District, December 29, 2009. The petition was summarily denied on January 14, 2010. He next filed a habeas petition on January 27, 2010, in the California Supreme Court. The petition was summarily denied on March 10, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on April 7, 2010. Respondent filed an answer to the petition on July 1, 2010. Petitioner filed a traverse on July 21, 2010.

## STATEMENT OF FACTS[2]

On December 28, 1997, at approximately 12:10 a.m., the victim (Petitioner's ex-wife) was walking to her car accompanied by her boyfriend and two children. Petitioner, who was hiding behind a fence on the north side of the premises, suddenly jumped out holding a large knife. He yelled, "I told you I'm going to get you." The victim's boyfriend fled and dialed 9-1-1.

---

[2] This information is taken from the opinion of the superior court.

Petitioner began stabbing, punching and kicking the victim. The victim was holding one of the children at the time. Petitioner stabbed the victim ex-wife eight times, stating, "I'm going to kill you." Petitioner caused a non-life-threatening wound to the child, and he also threw the child to the ground during the fray. When the victim fell to the ground, Petitioner grabbed her by the hair and dragged her ten to fifteen feet, whereupon he began to kick her in the torso. The victim feigned death, and Petitioner left. Upon arrival of officers and prior to being transported to the hospital, the victim told officers Petitioner had their seven-year-old child with him. Petitioner was arrested at his house.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63,

70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409. Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is

suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate

determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A. Last Reasoned State Court Decision

In the last reasoned decision, the Los Angeles County Superior Court rejected Petitioner's claims as follows:

> The Board found the Petitioner unsuitable for parole after a parole

7

consideration hearing held on May 28, 2009. The Petitioner was denied parole for three years. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if he is released. The Board based its decision primarily on the commitment offense and his lack of insight as to the underlying causes of his offense.

The Court finds that there is some evidence to support the Board's finding that the commitment offense was especially heinous, atrocious, or cruel because it was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D). The Petitioner stabbed the victim eight times, and only stopped when she pretended to be dead. This record provides some evidence that the petitioner caused great human suffering. Additionally, there were multiple victims attacked, as the victim was holding a child who was also injured, though not critically.

However, the Board may base a denial or reversal of parole on the circumstances of the commitment offense, or other immutable factors, only if those facts support the ultimate conclusion that the inmate continues to pose an unreasonable risk to public safety. *In re Lawrence* (2008) 44 Cal.4th 1181, 1221. Thus, the relevant inquiry is whether the circumstances of the commitment offense, and the Petitioner's criminal history, when considered in light of other facts in the record, including the passage of time and attendant changes in the inmate's psychological or mental attitude, are such that they continue to be predictive of current dangerousness. *Id*.

The Court finds that there were significant additional factors which are predictive of current dangerousness. The Board found that the petitioner minimized his conduct by stating that he had a knife to protect himself from the victim's boyfriend, who had run away. Although the Board notes that the petitioner admits to and does not refute the mechanics and very specifics of the crime, the Board properly considered the Petitioner's lack of insight, as they are relevant to a determination of his suitability for parole. Cal. Code Regs., tit. 15, § 2402(b); *In re Shaputis* (2008) 44 Cal.4th 1241, 1260.

Further, the Court finds that the record indicates that the petitioner had been involved in a pattern of anger mismanagement and abuse against women for an extensive period of time prior to the committing offense. The petitioner also violated restraining orders that were held against him. If an offense is the culmination of many years of abuse, or occurs after a pattern of violent and brutalizing behavior, it may be some evidence of current dangerousness. *In re Shaputis* (2008) 44 Cal.4th 1241, 1259.

The Board also found that the District Attorney's Office and Los Angeles Police Department had opposed the Petitioner's release. While this is not a factor on which the Board may rely to deny parole, such opposition may be properly considered. Penal Code § 3042.

The Board also noted several positive gains that the Petitioner has achieved while incarcerated. The petitioner had a generally positive institutional record, a positive work record, and has programmed extensively. However, it concluded that despite these gains, the petitioner posed an unreasonable threat to public safety at the time of its hearing. Penal Code § 3041(b).

Finally, subsequent hearings for inmates who are not granted parole must be scheduled 15 years after a finding of unsuitability, unless the Board finds by clear and convincing evidence that public safety does not require that additional period of incarceration. Penal Code § 3041.5(b)(3). Here, the Board determined by clear and convincing evidence that the Petitioner does not require more than three years of

incarceration.  The Court finds that, in light of the facts of the record, this was not a manifest abuse of the Board's broad discretion under the presumption.

(See Resp't's Ex. 2.)

### B. 2009 Board Hearing

As discussed by the superior court, the Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, prior criminality relating to the commitment offense, lack of insight, and oppositions from the Los Angeles County Police Department and Office of the Los Angeles District Attorney.

The Board determined that the commitment offense was especially heinous, atrocious and cruel, because the manner in which it was carried out demonstrated an exceptionally callous disregard for human suffering.  Cal. Code Regs., tit. 15, § 2402(c)(1)(D).  In finding some evidence supported this finding, the superior court noted that Petitioner repeatedly stabbed the victim and only stopped when she feigned death.  In addition, the record reflects Petitioner also kicked, punched, and dragged the victim even after she had been stabbed.  Certainly the superior court's finding was not unreasonable.  In addition, the Board found that Petitioner had attacked multiple victims.  Cal. Code Regs., tit. 15, § 2402(c)(1)(A).  The superior court determined there was some evidence to support this finding since Petitioner attacked not only his ex-wife, but also the child she was holding.

The Board also noted that Petitioner had a history of escalating criminal behavior relating to the commitment offense.  The superior court determined the evidence showed Petitioner had been involved in a pattern of anger mismanagement and abuse against women for an extensive period of time prior to the offense.  This finding was supported by previous incidents of domestic violence and violations of restraining orders against the victim.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002).  However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis

for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did not rely on the commitment offense alone.

The Board found that Petitioner lacked sufficient insight into the crime. It is undisputed that Petitioner took full responsibility for the mechanics of the crime, in that he admitted he stabbed, kicked, and punched the victim in the manner reflected in the record. However, the Board found it very troubling that Petitioner minimized his conduct by stating he only brought the knife for protection from the boyfriend. The Board found Petitioner's characterization was not credible given that the boyfriend immediately fled the scene and thus erased any need for Petitioner to continue wielding the knife. In addition, Petitioner had lain in wait for the victim and then attacked her, stating, "I told you I'm going to get you," and "I'm going to kill you." As discussed by the Board, these facts show a clear plan, and they do not support Petitioner's contention that he did not have the intent to attack the victim when he confronted her, and that he had armed himself only for the sake of personal protection. The Board also noted that Petitioner had brought up in a prior psychological report the fact that the victim wore a heavy jacket, implying he did not believe she would be seriously hurt. All of these facts support the Board's determination that Petitioner did not have the requisite insight into the causative factors of the offense. They further support the Board's determination that Petitioner's lack of insight caused him to remain an unreasonable risk of danger to the public, in particular, women who he might become involved with, should he be released from prison. "An inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." In re Shaputis, 44 Cal.4th 1241, 1260 (2008). The superior court's determination that some evidence supported the Board's finding was not unreasonable.

Finally, the Board considered the oppositions of the District Attorney's Office and the Los Angeles Police Department. While not a factor that can be relied on to deny parole, it can be properly considered pursuant to Cal. Penal Code § 3042 and Cal. Code Regs., tit. 15, § 2402(b).

The Board also considered numerous factors in support of suitability. Petitioner was commended for a clean disciplinary record. He had a good work record with multiple laudatory statements. He had programmed extensively and in an exemplary fashion. He had obtained

several vocations and earned his GED.  His parole plans were viable and positive, and he had means to support himself once released. Nevertheless, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  In light of the circumstances of Petitioner's commitment offense, his escalating violent behavior relating to the victim, and his lack of insight into the causative aspects of the offense, the state courts' determination that there was some evidence to support the Board's 2009 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Although Petitioner maintains that factors such as the commitment offense and unstable social history are too old to offer any value, they are relevant to predicting a risk of future violence when tied to Petitioner's lack of insight and minimization of his conduct.  Accordingly, federal habeas corpus relief is unavailable.

Petitioner also contends the Board's implementation of Proposition 9 violates the constitutional prohibition against ex post facto laws.  The Ex Post Facto Clause of the United States Constitution prohibits the states from passing any "ex post facto law," a prohibition that "is aimed at laws 'that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995); see also Weaver v. Graham, 450 U.S. 24, 28 (1981) (providing that "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"). The United States Supreme Court has held that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000).

On November 4, 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law," which, *inter alia*, altered the frequency of parole hearings for prisoners not found suitable for parole.  Prior to the passage of Proposition 9, in the event a prisoner was determined unsuitable for parole, a subsequent parole hearing would be held annually thereafter. Cal Penal Code § 3041.5(b)(2) (2008).  If the parole board determined it was not reasonable to expect parole would be granted within the next year, it could defer rehearing

for two years. Id.  If the prisoner was convicted of murder and it was not reasonable to expect he/she would be granted parole within the year, the board could select a rehearing term of up to five years. Id. Proposition 9 changed the frequency of subsequent parole hearings as follows:

> The board shall schedule the next hearing, after considering the views and interests of the victim, as follows:
>
> (A) Fifteen years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that the criteria relevant to the setting of parole release dates enumerated in subdivision (a) of Section 3041 are such that consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than 10 additional years.
>
> (B) Ten years after any hearing at which parole is denied, unless the board finds by clear and convincing evidence that . . . consideration of the public and victim's safety does not require a more lengthy period of incarceration for the prisoner than seven additional years.
>
> (C) Three years, five years, or seven years after any hearing at which parole is denied, because . . . consideration of the public and victim's safety requires a more lengthy period of incarceration for the prisoner, but does not require a more lengthy period of incarceration for the prisoner than seven additional years.

Cal. Penal Code § 3041.5(b)(3) (November 4, 2008).

Petitioner claims an ex post facto violation occurred when Proposition 9 was applied to him retroactively.  Prior to passage of Proposition 9, Petitioner was eligible for annual parole review hearings.  Petitioner asserts that with the passage of Proposition 9, the minimum time he must serve before a subsequent parole hearing is now three years.  In this case, the Court does not find an ex post facto violation.

In Morales, a California statute changed the frequency of reconsideration hearings for parole from every year to up to three years for prisoners convicted of more than one murder. 514 U.S. at 503.  The Supreme Court determined the statute did not violate ex post facto because the retroactive application of the change in California law did not create "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Garner v. Jones, 529 U.S. 244, 250 (2000), quoting, Morales, 514 U.S. at 509.  The Supreme Court noted that the law "did not modify the statutory punishment for any particular offenses," it did not "alter the standards for determining either the initial date of parole eligibility or an inmate's suitability for parole," and it "did not change the basic structure of California's parole law." Garner, 529 U.S. at

250, *citing*, Morales, 514 U.S. at 507. Likewise, in this case Proposition 9 did not modify the punishment for Petitioner's offense of attempted murder, it did not alter his initial parole eligibility date, and it did not change the basic structure of California's parole law. The board must consider the same factors in determining parole suitability as before. See Cal. Penal Code 3041(b); Cal. Code Regs., tit. 15, § 2402(b).

Nevertheless as noted above, in Garner the Supreme Court found that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." 529 U.S. at 250. In Garner, the Supreme Court determined that an amendment to Georgia's parole law did not violate ex post facto even where the frequency of reconsideration hearings was changed from every three years to every eight years. Id. at 256. The Court held that it could not conclude that the change in Georgia law lengthened the prisoner's time of actual imprisonment because Georgia law vested broad discretion with the parole board to set a prisoner's date of rehearing. Id. at 254-56. In addition, the Court found it significant that the parole board's own policies permitted "expedited parole reviews in the event of a change in [a prisoner's] circumstance or where the Board receives new information that would warrant a sooner review." Id. at 254 [Citation.].

Here, the California parole board is still vested with broad discretion in selecting a date of rehearing from three years to 15 years. While it is true that Petitioner is no longer eligible for annual parole review hearings as determined by the Board, and a date must be set at the minimum of three years, the Board retains the discretion, as did the Georgia parole board in Garner, to advance a hearing at any time should there be a change in circumstances. Pursuant to Cal. Penal Code § 3041.5(b)(4), the Board

> may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).

Based on the Supreme Court's holding in Garner, this Court does not find, and Petitioner has not demonstrated, that Proposition 9 creates more than just a "speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes."

Garner, 529 U.S. at 251, *quoting*, Morales, 514 U.S. at 509.  For the above reasons, Petitioner's challenge to Proposition 9 must fail.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:**   **September 28, 2010**                  **/s/ Gary S. Austin**
                                           UNITED STATES MAGISTRATE JUDGE